JOSEPH H. TAYLOR v. JOSEPH AINSWORTH, EXECUTOR.

FILED NOVEMBER 18, 1896. No. 6901.

1. **Equity:** JURISDICTION. As a general rule, a court of equity will not interpose an objection to its own jurisdiction on the ground that the plaintiff has an adequate remedy at law, but will retain the cause and award the relief to which the parties would have been entitled in a court of law. Following *Sherwin v. Gaghagen,* 39 Neb., 238.

2. **Witnesses:** TRANSACTIONS WITH DECEASED PERSON: EVIDENCE. It was alleged by plaintiff, an executor of a person deceased, that the defendant had received from the deceased, during her lifetime, the sum of $1,000, which he undertook to loan for her at advantageous rates, and which he falsely and fraudulently pretended to her he had so loaned, and that he had refused to pay the same, or any part thereof. On trial of the issues as properly involving the performance of a trust, certain letters of the defendant were introduced in evidence by plaintiff, which defendant was required to identify as a witness, and as a witness he was required by plaintiff to state simply that he had received from the deceased $1,000. *Held,* That the transaction between the deceased and the witness was an entirety, and that the proofs above made authorized the defendant to testify as to how little, if anything, remained unpaid to the estate of the testatrix.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*C. A. Baldwin,* for plaintiff in error.

*G. W. Shields* and *Curtis & Shields, contra.*

RYAN, C.

The defendant in error, in his petition in the district court of Douglas county, alleged that he had qualified as executor of the estate of Mary E. Johnson, who had died in Monroe county, Michigan, and that the plaintiff in error was in possession of $1,000 of the property of the testatrix. As grounds for equitable relief it was alleged by the executor in his petition that Joseph H. Taylor had possessed the implicit confidence of Mary E. Johnson;

that by a promise to loan the above sum at a rate of inter-est of eight or nine per cent per annum on good security, as her agent, the said Taylor prevailed upon her, the said Mary E. Johnson, to permit the said money to remain in his hands for the purpose indicated. Following the above averments it was charged in the petition that by various letters of Taylor, each containing a remittance of eighty dollars, to the deceased, he had admitted that such remit-tances represented the annual interest on the above sum of $1,000 at eight per cent for one year; that no part of said one thousand dollars ($1,000) had ever been paid to the deceased; that no part of said money had been loaned by Taylor, but that he had fraudulently concealed from said Mary E. Johnson this fact; wherefore the said Taylor had held said money as her agent in trust for her and that he still holds the same in trust for said estate. These averments were supplemented with a prayer for disclos-ure by Taylor as to what had been done with said money; that an account might be taken of the amount still in his hands as agent and trustee of the deceased; that the ex-ecutor might have judgment for the said sum of $1,000 and any further sum which the defendant might thereon have realized, and for general equitable relief. It is very doubtful whether there is stated in the petition any suffi-cient grounds to justify an appeal for relief to a court of equity. In the answer, however, there were averments showing that Mrs. Johnson, who had no home, was taken into the family of Taylor at her request in the spring of 1871, and provided for until the summer of 1872, when she went to California, where she remained one year, and then came back and made her home in Taylor's family for the period of one year; that in the fall of 1874, Mrs. Johnson went to Monroe, Michigan, and returned to Omaha and remained in Taylor's family for about two months, after the lapse of which time she again went to California with means furnished by Taylor, and returned to the family of Mr. Taylor in April, 1882, and there remained until the fall of 1883, when she left the family of Mr. Taylor by

whom she has never since been seen. In respect to the arrangement under which the money was held by Mr. Taylor, he, in his answer, made the following averments: "That at the time defendant so took the money in 1872, he gave her his note therefor, due from him one year from date, as evidence that he had the money. She kept that note until 1885, upon which defendant had paid interest and a part of the principal, and in the year last named she gave up to defendant the note fully canceled, since which time there has existed between them no written evidence of any liability on the part of the defendant to said Mrs. Johnson. Defendant says that the fact is that from the long residence of Mrs. Johnson in the family of the defendant and her apparent frail and helpless condition she had come to be regarded by defendant and his family as one thereof and dependent upon them to a great extent for her maintenance, and defendant had treated her as such; that she was anxious to retain as long as she lived the idea that she had $1,000 intact so that she, in her helplessness, might have some apparent source of maintenance and an income by way of interest thereon while she lived, and it was again and again talked over between her and this defendant and his family, and it was promised and agreed between them, that while she lived the defendant was to pay her an amount each year equal to the interest on a thousand dollars at the usual rate of interest. And it was further agreed by them then and there that if by reason of sickness or other cause she needed more money than would accrue by way of such interest, defendant promised, at her request, to provide it for her. It was further agreed between said Mary E. Johnson and this defendant, and in consideration of the promise of this defendant she agreed and promised defendant that after her decease, that if any portion of the thousand dollars remained, this defendant should have what did so remain for the years of care, board, maintenance, and home he had so as aforesaid provided and furnished for her." Defendant alleged that he, at all

times, when she wanted money and asked him for it, gave it to her; that he could not now state what the payments amounted to, but that they exceeded the sum of two thousand dollars ($2,000); that the amounts of these payments are not material because of the aforesaid agreement that whatever remained at the death of Mrs. Johnson should be the property of the defendant. From the above quotation and statements of a portion of the answer, it is quite apparent that there was between the deceased and the defendant a relation of trust, and it is by the answer made much more apparent than by the petition alone, why there was a propriety in the adjustment by a court of equity of the disputed matters between the litigants. We shall therefore treat the case as it was treated by the district court, as being of equitable cognizance. (*Sherwin v. Gaghagen*, 39 Neb., 238.) There was a reply which put in issue all the averments of new matter contained in the answer. Upon a trial of the issues presented there was a judgment in favor of the executor for the sum of $1,000, with interest. To reverse this judgment, proceedings in error have been prosecuted to this court.

By the motion for a new trial and petition there is presented but one question which we can consider, and that involves the correctness of the ruling of the district court with reference to certain evidence. On the trial there was offered no proof that Mrs. Johnson had at all been dissatisfied with the performance of his agreement by Taylor so long as she lived. The first requirement, that Mr. Taylor should pay the entire sum, was made by Mrs. Johnson's executor, and was founded upon certain letters written by Mr. Taylor to the testatrix. In the petition such parts of these letters as were deemed material were copied, and therefore we assume that we shall justly state the proofs upon which reliance is placed by copying this portion of said pleadings, which was as follows:

"That on the 10th day of November, 1885, defendant wrote to the deceased as follows:

" 'I might have loaned your money out at eight per cent, with good security. I might have got nine per cent by waiting, but thought I had better let it out at the first chance I got to loan the even $1,000, for I might not have a second chance for some time. It is in two notes of $500 each, due in one and two years, but if you want the last five hundred before it is due it can be sold at about the face any time. It draws interest since about the 1st of November. I will keep the notes here and see about collecting and sending you the interest as it becomes due.

" 'Yours truly, J. H. TAYLOR.'

"That on November 8, 1886, the defendant paid to deceased the sum of $80, and in writing said to her:

" 'Enclosed is a draft of eighty dollars, the interest on one thousand dollars for one year at eight per cent—will keep the five hundred dollars just placed at interest at the best rate that I can get.'

"December 3, 1888, defendant paid to the deceased the sum of eighty dollars, being interest for one year on said one thousand dollars. On December 24, 1889, defendant paid to the deceased the sum of eighty dollars, enclosing the same in a letter in which he said:

" 'Enclosed is a draft for eighty dollars interest which I have just received, and which should have been paid November 1, but I did not get it until now. I will try to get your money in this next spring or next summer and send it all to you, so that you can have it under your own control. J. H. TAYLOR.'

"On the 16th of February, 1891, the defendant paid the deceased the sum of eighty dollars, enclosing the same in a letter to her in which he said:

" 'Enclosed is a draft for $80, which you ought to have had before, but for the last few months it has been almost impossible to collect anything, and entirely out of the question to borrow any money out of the banks.'

"On the 29th day of October, 1891, the defendant paid to the deceased the sum of $80, enclosing the same in a letter to her in which he said:

" 'Enclosed is a draft for eighty dollars, and a receipt, which you will please sign and return to me. As regards sending your money to you, I could not do so if I wished, nor do I think it advisable to do so.' "

On the trial Mr. Taylor was called by the plaintiff as a witness and simply required to state that he had received from the deceased $1,000. On cross-examination he testified, subject to objection as to incompetency as a witness in relation to a transaction with a person now deceased, whose personal representative is an adverse party, that he still retained in his hands only the sum of $365. There was no evidence in contradiction of this as to payment, so that we are bound to assume that the district court disregarded the proof of payment, and held the defendant bound by his letters and his testimony. If the explanatory testimony was competent, the amount of the recovery was certainly too great, and to this extent we may properly consider the ruling of the trial court.

The assignments in the petition in error are too broad to admit of a specific examination of any ruling with respect to the several questions asked, for the language is that there "was error in refusing to permit the defendant to testify below and make answer to the several questions propounded to him while on the witness stand," etc.

In section 329 of the Code of Civil Procedure there is this language: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, * * * unless such representative shall have introduced a witness who shall have testified in regard to such transaction or conversation, in which case the person having such direct legal interest may be examined in regard to the facts testified to by * * * such witness, but shall not be permitted to further testify in regard to such transaction or conversation." In this case the defendant was required by the plaintiff to testify that the letters

introduced in evidence had been written by him, and that he had received from the deceased the sum of $1,000. Both the letters and the admission of the receipt of the money were evidences of a transaction between the deceased and the defendant in error, Mr. Taylor. It is true the testimony as to how much was still owing was elicited on cross-examination, but no objection was made on that ground. The record shows that the only objection made was because "the witness is incompetent, he having a direct legal interest in the result of the controversy." This objection was overruled, and the witness answered that he still held in his hands $365. In our view the transaction contemplated by the statute was the entire transaction, and among its elements were the amount with which Mr. Taylor was entrusted, the terms on which he received it, and what sum was still unaccounted for. The fact that he was the witness called by the executor did not the less make him a witness who, in the language of the statute, had testified in regard to such transaction. The construction which regards each letter as a transaction, and the receipt of the money as a transaction, each independently of the other, and of every other fact, is one which would enable the representative of a deceased person to use as an offensive weapon the shield which the law has provided against the possible perjury of one party when death has sealed the lips of the other party to a transaction. The court should have considered the testimony of Mr. Taylor as to the amount still unpaid, and had this been done the judgment must have been for a less sum than that rendered. The judgment of the district court is therefore reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED.