THE MERCHANTS' LOAN AND TRUST COMPANY

*v.*

DOMINICK EGAN, Exr.

*Opinion filed October 23, 1906.*

1. EVIDENCE—*burden of proof where gift is claimed.* In trover, where the title to property is claimed as a gift, the burden of proof is upon the one claiming the gift; and where the question has been submitted to the trial court and its finding affirmed by the Appellate Court the finding cannot be disturbed by the Supreme Court.

2. SAME—*when witness is not "called" by adverse party.* By introducing in evidence, in an action of trover, by an executor, part of the testimony given by the defendant upon his citation by the probate court under section 81 of the Administration act, the plaintiff does not "call" the defendant as a witness, within the meaning of section 2 of the Evidence act, and the defendant is not thereby rendered competent to testify, generally, in his own behalf.

3. SAME—*when copy of a memorandum is properly excluded.* Where a writing is offered in evidence as a copy of an original writing which has not been produced, it is a matter of discretion with the trial court, under the particular circumstances, whether it will permit the alleged copy to be introduced in evidence as a part of a conversation or interview between the plaintiff and the defendant at a time when the defendant claimed to have shown the copy to the plaintiff, who read it over.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. H. B. WILLIS, Judge, presiding.

This is an action in trover, brought by appellee in the circuit court of Cook county against Patrick J. Sexton, (who died pending the trial and whose executor was substituted as defendant,) to recover certain bonds of the face value of $29,000 and a promissory note for the sum of $5000, payable to the order of Thaddeus J. Butler and made by John Ireland. Defendant pleaded general issue. Jury was waived and the cause submitted to the court for trial. The court found for the plaintiff, assessing his damages at $34,378.52, and entered judgment on the finding.

Dr. Thaddeus J. Butler was a Catholic priest of the diocese of Chicago, and had officiated as rector of St. John's parish, in that city, from 1887 until shortly before his death. June 23, 1897, he left Chicago for Rome, Italy, expecting to be there consecrated as Bishop of Kansas. He died at Rome, July 16, 1897. He made his will June 23, 1897, the day he left Chicago. The following bequests were made by the will: Testator's brother, Patrick T. Butler, $5000 for the use of the Church of Immaculate Conception, Chicago; Miss Nellie Cunningham, $5000 for the convent of Rathfarnum, Ireland, conditioned on certain life payments to testator's sister; testator's brother, Francis J. Butler, $1000, or £200, in case he survive testator; the Rev. Dominick Egan, $2000 to be expended for masses for the repose of testator's soul; Archbishop P. A. Feehan, for the use of the Church of St. James at Rockford, Illinois, of which testator was formerly pastor, $3000. The last paragraph of the will reads as follows: "The rest, residue and remainder of all my real and personal estate I give, devise and bequeath the same unto the Rev. Dominick Egan, of St. Stephen's Church, Chicago, my very dear and trusted friend. I hereby appoint the said Rev. Dominick Egan executor of this my will, and ask that no bonds be required of him."

At the time of testator's death his will was in a vault in the Rookery building, in the city of Chicago. Miss Margaret McNamara, his house-keeper, was custodian of the will and delivered it to the Rev. Egan, informing him that he was appointed executor. In 1895 testator rented box 5294 from the National Safety Deposit Company in the First National Bank building of Chicago. This box was leased to Butler in his own name and P. J. Sexton was named as deputy. The lease of the box was afterwards changed on June 24, 1896, at the testator's request, to run to him and Sexton jointly. The testator had a key to the box after the lease was changed. This key he had when he left Chicago for Rome. Sexton testified that he had a key to the box in March, 1897. He also testified that he had a box of his own in another safety vault and testator had other boxes in other vaults. There is nothing in the evidence to indicate that Sexton ever kept any of his own papers or documents in box 5294, or that he ever opened the box until after Dr. Butler's death. He testified that he was at the box once in March, 1897, with the testator. After Dr. Butler's death Sexton stated that the third day following the decease he opened the box and found a large envelope marked "Instructions," in Dr. Butler's handwriting; that in this envelope there was some correspondence between Dr. Butler and Archbishop Ireland, with a note of the latter for $5000; that there was written on the envelope: "Friend P. J. Sexton:—Destroy this correspondence in the event of my death," and "$5000—No," below. He found in the box another large envelope, apparently containing securities, on the back of which were memoranda scratched both ways, the purport of which Sexton had no special recollection. Sexton claimed that Dr. Butler, shortly prior to his death, gave him the bonds and note. The probate court found the bonds and note a part of Dr. Butler's estate. On appeal from the decision of that court the matter was heard in the circuit court and decided in the same way.

That cause was appealed to the Appellate Court and error confessed as to the description of the bonds but denied in all other respects. This suit was then started in the circuit court and judgment rendered as heretofore stated and affirmed by the Appellate Court.

McCULLOCH & McCULLOCH, for appellant.

MORAN, MAYER & MEYER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The finding of the Appellate Court is conclusive as to all the facts in the case. Appellant claims that the trial court ruled improperly on the admission and exclusion of testimony. There is some discussion in the briefs as to the burden of proof. We think where the title to property is claimed as a gift, the burden of proof is undoubtedly on the one claiming the gift. In any event, the cause was submitted to the trial court and its finding cannot be disturbed, since that finding has been·affirmed by the Appellate Court. The issue in *Riggs* v. *Powell,* 142 Ill. 453, cited by appellant on this question, so differs from the issue in this case that it can have little weight here.

The serious contention centers about the right of Sexton to testify on certain subjects about which he was questioned by his counsel. Sexton was called as a witness under section 81 of chapter 3, (Hurd's Stat. 1905, p. 118,) on the administration of estates, which is as follows: "If any executor or administrator, or other person interested in any estate, shall state upon oath, to any county court, that he believes that any person has in his possession, or has concealed or embezzled, any goods, chattels, moneys or effects, books of account, papers or any evidences of debt whatever, or titles to lands belonging to any deceased person; or that he believes that any person has any knowledge or information of or concerning any indebtedness or evidences of indebtedness, or property titles or effects, belonging to any deceased

person, which knowledge or information is necessary to the recovery of the same, by suit or otherwise, by the executor or administrator, of which the executor or administrator is ignorant, and that such person refuses to give to the executor or administrator such knowledge or information, the court shall require such person to appear before it by citation, and may examine him on oath, and hear the testimony of such executor or administrator, and other evidence offered by either party, and make such order in the premises as the case may require."

Sexton's testimony on the citation before the probate court was taken down in shorthand, a part of it having been introduced by appellee on this trial in the court below and the balance having been introduced by appellant. Appellant's counsel contend that because of the introduction of the evidence taken on citation before the probate court Sexton was rendered a competent witness to testify as to all matters pertaining to the bonds and note, whether occurring before or after the death of Dr. Butler. It is contended that by introducing this evidence Sexton was thereby called as a witness by the executor, who was an adverse party within the meaning of section 2 of chapter 51 of Hurd's Statutes of 1905, and that being so called he was rendered competent to testify in the present suit as to all matters material and relevant.

Section 2 is as follows: "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any idiot, habitual drunkard, lunatic or distracted person, or as the executor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending, and also except in the following cases, namely:" There

are four exceptions given in the statute, none of which are applicable to the present point under discussion.

The incompetency of witnesses because of interest has invoked much discussion. Many authorities have been cited by learned counsel in their briefs. Appreciating the importance of the question we have given it full and careful consideration.

In the well considered opinion of the Appellate Court by Adams, J., the point at issue is clearly set forth, as follows: "The language of section 2, chapter 51, is: 'No party to any civil action * * * shall be allowed to testify *therein* of his own motion or in his own behalf * * * unless when called as a witness by such adverse party so suing or defending.' By the section the prohibition against testifying refers expressly to the pending suit in which one sues or defends in one of the characters named in the section, by the use of the word 'therein,' and the exception to the prohibition, 'unless when called as a witness,' etc., is an exception to the prohibition, and the section is to be read as if the word 'therein' (which is evidently understood) followed next after the word 'witness,' so that the reading would be, 'unless when called as a witness therein,' etc. The statute does not mean that if the party has been called by the 'adverse party so suing or defending' in a previous suit or proceeding between the same parties and in respect to the same matters he may testify in the pending suit; and even though it should be thus construed, it would, as we think, have no application to the present case. The proceeding under section 81 of the Administration act is not a suit, nor is the executor necessarily a party to the proceeding. The information referred to in the section may be given to the court by an heir, legatee, devisee, administrator or creditor. The section provides that 'the court shall require such person to appear before it by citation, and may examine him on oath,' etc. It is discretionary with the court whether the party alleged to have property belonging to the estate shall be ex-

amined under oath, (*Wade* v. *Pritchard*, 69 Ill. 279,) but it is the court which calls him by citation and is to examine him, which, of course, the court may do by attorneys."

Was the Appellate Court right in its holding on this question? The question is not what ought to be the statute, but what is a fair construction of the statute as it now stands. None of the cases cited by appellant, from this State, touch the exact point at issue. They simply hold that if a party is called in a case by the adverse party and the evidence does not come within any of the exceptions named in section 2, the witness becomes competent for all purposes. A careful reading of the decisions cited from other States shows that in very few of them the facts were at all like the facts in the present case. Some of the authorities cited state that if a party is called in a case by the adverse party on a subject that is not within any of the exceptions, then he becomes competent for all purposes. (*Mahoney* v. *Jones,* 35 N. Y. App. Div. 84; *Young* v. *Montgomery,* 161 Ind. 68; *Warren* v. *Adams,* 19 Col. 515; *Seip* v. *Storch,* 52 Pa. St. 210; *Taylor* v. *Ainsworth,* 49 Neb. 696.) Again, it is held that where depositions of an incompetent witness are taken in a suit without objection, even though the depositions are not introduced and read as evidence, the incompetency of the witness is waived and he can be called. (*Jackson* v. *Mumford,* 74 Tex. 104; *Thomas* v. *Irvin,* 90 Tenn. 512; *In re Estate of Soulard,* 141 Mo. 642.) So far as these cases apply they tend to uphold the contention of appellee herein. Again, the cases of *Rouse* v. *Whited,* 25 N. Y. 170, *May* v. *Curley,* 113 id. 575, and *Robinson* v. *Ferry,* 11 Conn. 459, state that where an adverse party calls out a part of a conversation as an admission, then the opposite party is entitled to have all the conversation or admission, so far as it relates to the subject matter and tends to explain it. In *Beardsley* v. *Reeves,* 76 Mich. 661, the court held that if a part of a preliminary examination in the probate court was introduced, then the opposite party

was entitled to have all of the testimony taken in the probate court. Other cases relied upon by appellant hold that where an adverse party is called to testify to a certain contract or transaction he is entitled to tell all about that contract or transaction. (*Niccols* v. *Esterly,* 16 Kan. 32; *Lyon* v. *Batz,* 42 Mo. App. 606; *Fox* v. *Barrett's Estate,* 117 Mich. 162.) Two cases cited by appellant, namely, *Forrester* v. *Cline,* 64 Pa. St. 29, and *In re Smith's Appeal,* 52 Mich. 415, tend to uphold the contention of appellant, but the weight of these cases is very greatly lessened from the fact that the statutes ruled upon are much different from our own.

It is insisted in this connection that the case of *Lilley* v. *Insurance Co.* 92 Mich. 153, raises, and decides on substantially the same state of facts, the question we are now considering. It is true that the Michigan court quoted in that case with approval the decision in *In re Smith's Appeal, supra,* but the part of the decision in which they referred to and relied upon the *Smith case* was not necessary for the decision of the question at issue, as a careful reading of the entire opinion clearly shows. The question in *Lilley* v. *Insurance Co. supra,* was whether evidence of the witness taken on a citation before the probate court was properly admitted in another trial. The Supreme Court of Michigan, in reviewing this question, stated that this evidence having been admitted, the witness who had been so examined could then, if he desired, take the stand and testify fully about these matters; but he did not attempt to so testify in the lower court, and therefore there was no necessity for a direct ruling on the question here under discussion.

This court in *Millard* v. *Millard,* 221 Ill. 86, discusses the precise question here at issue, and states (p. 91) : "The complainant, to prove the allegations of her bill, offered in evidence portions of the testimony of the defendants given in the probate court in a proceeding for the discovery of property of the estate alleged to have been concealed or to be in

their possession.   It was thereby proved that the defend-
ants, on April 22, 1896, went to the safety deposit box of
the deceased, of which Jane H. Millard had the key, and
took therefrom $12,070 in gold certificates, railway bonds
amounting to $5000, with coupons representing a year's in-
terest of $350, a $50 greenback and a $10 gold piece, and
that neither the deceased, nor anyone representing him, was
present.   The defendants then offered in evidence other por-
tions of their testimony in the probate court for the purpose
of establishing a gift of the property taken from the box by
the deceased to the defendant Jane H. Millard.   The evi-
dence was objected to, but was received and considered by
the master and circuit court.   Ordinarily an admission is to
be taken as an entirety, and when a part of a statement is
introduced as an admission against a party, he is entitled
to introduce any other part relevant to the matter in issue
which will explain, qualify, limit, modify or destroy the ef-
fect of the admission.   (1 Greenleaf on Evidence, sec. 201;
1 Elliott on Evidence, sec. 241.)   In this case the evidence ·
perhaps went beyond the rule as applied to ordinary cases,
but under the pleadings none of the evidence so offered was
admissible or could be considered.   The evidence was in
contradiction of the defendant's answers, and the findings of
the master and chancellor based upon it were at variance
with the averments of the answers."

   While this court in that case concluded that the point
here involved was not necessary for the decision of that
case, yet the views expressed show clearly our opinion that
the evidence taken in the probate court should be classed
and treated as a mere admission, and that the same rules of
evidence would apply to such admission as would apply to
any admission made out of court.   This view we believe to
be upheld by the great weight of authority.   (16 Cyc. of
Law and Proc. 1040, 1041, and cases therein cited; *Morris*
v. *Jamieson,* 205 Ill. 87.)   This court held in *Miller* v.
*People,* 216 Ill. 309, that the admissions and statements

made by a defendant in a former trial are competent to be received as evidence against him to the same extent as if these statements and admissions had been made by him out of court, notwithstanding the fact that he did not testify in the last trial where such admissions were proved, and that thereby attention might be called to the fact, indirectly, that he did not so testify. By introducing Sexton's testimony taken at the hearing on the citation in the probate court he was not thereby called as a witness by the adverse party, and his incompetency as a witness, outside of the admissions made on this examination, was not affected. He was called as a witness by appellee on the hearing below and asked one or two questions as to the possession of the bonds. This appellee clearly had a right to do without making him a witness as to all questions, under the first exception to said section 2, which states that in any such action, suit or proceeding a party or interested person may testify to facts occurring after the death of such deceased person, etc.

It is claimed by appellant that the court erred in excluding questions asked of appellee with reference to certain writings of the testator which it was insisted the testator's house-keeper, Miss Margaret McNamara, had in her possession and had shown to appellee and P. J. Sexton. This writing purported to be a memorandum of certain property of Dr. Butler's, made by him. Miss McNamara, it seems, had testified at a former trial but at the time of this trial was out of the State. Appellant's counsel infer, by some of their questions addressed to appellee, that she was so absent at the suggestion of appellee, but this was denied. The original memorandum claimed to be in the handwriting of Dr. Butler was not produced. It was intimated by counsel that such original memorandum was in the possession of counsel for the appellee, the late Judge Moran, and that he ought to produce it. When this question was raised the trial judge said: "The only question now is whether the conditions have ripened to that point where the court should

exercise what power he has on that topic. I do not think it has arisen yet where I should make any compulsory order." Mr. Hynes, who was acting as counsel for appellant, said: "I see some force in that, but I think I ought to have it now for the purpose of cross-examining this witness." Counsel for appellant did not further urge the point that this original memorandum, claimed to be in the handwriting of Dr. Butler, should be produced, so far as we can find from the arguments or record. Clearly, therefore, under all authorities appellant was not entitled to ask any question of the witness Egan, or any other witness, with reference to this original memorandum.

It is further contended by appellant that a copy of this memorandum or writing was made by P. J. Sexton, and that this copy was shown to appellee, who read it over at one of their interviews. When on the witness stand appellee was shown what was claimed to be the same copy that had been shown him by Sexton, and was asked if it was not the same. On objection the court refused to allow him to answer. Sexton was examined as to this same paper and testified it was the same as he had shown appellee in an interview out of court. Appellant then again offered this copy in evidence and the court refused to permit it to be introduced, although it is inserted in full at that point in the record. Among other authorities in support of this contention is cited Wigmore on Evidence, (vol. 3, sec. 2104,) which reads: "Where a writing offered refers to another writing, the latter should also be put in at the same time, provided the reference is such as to make it probable that the latter is requisite to a full understanding of the effect of the former. The same principle would apply to another writing not expressly referred to but necessary, by the nature of the documents, to a proper understanding of the one offered. Much, therefore, will depend upon the circumstances of each case and the character of each document, and no fixed rule can fairly be laid down. The trial court's discretion should con-

trol." Under this authority the trial court's discretion should govern, and there was, therefore, no error in his excluding it.

Very able counsel were engaged on both sides of this case from its inception. It is evident from this record that they understood the questions at issue very clearly from the first, and the learned judge who heard the case below, in our judgment, ruled with great care on all these questions. He admitted proof as to the contents of a letter which was partly written by Sexton to witness McHugh, because it had been shown that it had been read by McHugh and commented on in a conversation with Sexton and that the letter was lost. It is quite possible, by the same reasoning which admitted the contents of this letter, the court might have admitted the copy of the memorandum as a part of a conversation between appellee, Egan, and Sexton. The trial judge heard the case without a jury. In our judgment this memorandum, whether introduced or excluded, was of so slight weight on the question at issue that it could not in any way, with or without a jury, have affected a decision as to whether the bonds and note in question were a gift to Sexton. Indeed, if the case had been tried before a jury and the memorandum there introduced, it would have been entirely proper for the court to have instructed the jury that it was only permitted to be introduced because it was a part of a conversation between appellee and Sexton, and not because it tended to prove or disprove the gift in question. This is in entire harmony with the ruling in *Carter* v. *Carter,* 152 Ill. 434, cited by appellant on this point. It was there held that certain unsigned letters could be read only because they were part of the *res gestæ,* but could not be read to prove the main question at issue in the case. We do not think it was error to exclude the copy of the memorandum in question.

We find no reversible error in the record. The judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*