In re Estate of Rodney A. Wright, Deceased. H. G. Wright et al., Executors of Estate of Rodney A. Wright, Deceased, Petitioners for a Citation, Appellees. Marie Furr, Intervening Petitioner, Appellant.

Gen. No. 9,455.

Heard in this court at the May term, 1939. Opinion filed February 17, 1940. Rehearing denied March 19, 1940.

LLOYD M. BROWN and C. W. ARMSTRONG, both of Chicago, for appellant.

John K. Newhall, of Aurora, and Cassius Poust and L. Frank Moudry, both of Sycamore, for appellees.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

At the time of the death of Rodney A. Wright, late of the county of DeKalb, C. D. Thornton, cashier of the DeKalb Trust and Savings Bank, had in his possession, in a safety deposit box of the bank, Certificate No. 397, for 2,000 shares of the common stock of the Northern Illinois Finance Corporation, and also collateral trust notes of the Finance Corporation of the face value of $14,000. All these securities, it is conceded by the parties hereto, at one time were the property of Rodney A. Wright, together with other similar notes of the face value of $6,000. So far as can be ascertained from the record, the certificate and the notes were originally put by Wright in the custody of Thornton, as a means of placing some of his personal property in a place unknown to his wife, and to avoid an injunction obtained by her in a divorce suit. The certificate for the stock is in the name of P. T. Wright, a brother of Rodney A. Wright, and indorsed by the former in blank. P. T. Wright does not claim any interest in the stock. The notes were payable to bearer, and were renewed from time to time, and new notes, took the place of matured notes.

On May 23, 1934, the executors of the estate of Rodney A. Wright filed in the county court of DeKalb county, their petition for citation, under section 82 of the Administration Act [Ill. Rev. Stat. 1939, ch. 3; Jones Ill. Stats. Ann. 110.082], alleging that C. D. Thornton had in his possession the certificate and notes; that the Northern Illinois Finance Corporation had in its possession, money in the nature of dividends on the stock all of which, it was alleged in the petition,

belonged to the estate of Rodney A. Wright. The petition prayed that the respondents be required to answer the petition, and ordered to deliver the certificate and the notes to the executors.

Rodney A. Wright was a physician. He was in Europe from May to August in 1932. In December 1932, he was ill in the Masonic Memorial Hospital in Chicago. In January 1933, he was a patient in the Glidden Hospital in DeKalb. Dr. Wright was not in the hospital in March 1933, and sometime between January and March 1933, he was able to be out and attend to his financial affairs. Sometime in March 1933, he went to Prescott, Arizona, where he remained until his death on August 24, 1933. Before 1932, and thereafter until his decease, Wright was deeply in love with Mrs. Marie Furr who resided in Chicago. He wrote to her from Prescott many letters expressing his great love, indeed, infatuation. In some of these letters he discussed business matters and referred to the securities, which are the subject matter of this litigation. The letters disclose that Wright was greatly disturbed by his marital status, and the pendency of the divorce suit against him. The letters reveal that Wright disliked his wife; that he and Marie Furr had kept company and that his tender feelings were reciprocated.

Marie Furr filed an intervening petition in the summary proceeding for citation, claiming as her own by gift *inter vivos* from Rodney A. Wright, the notes for $14,000 and the certificate for 2,000 shares of stock and the increments and earnings thereof. In her petition, she alleged that the notes and the certificate were given to her by Wright, and that she placed them in a safety deposit box in a bank in Chicago, to which she alone had access; that in January 1933, C. D. Thornton suggested to her that they take the securities to Dr. Wright in the hospital in DeKalb and this was done; that Wright told Thornton in her presence, that the securities were her property and asked Thornton to keep

them for her, but this Thornton declined to do; that in February 1933, with her knowledge and consent, Dr. Wright took the securities to Thornton's bank and again told Thornton that the securities belonged to Marie Furr, and asked Thornton to keep them for her, and he has since kept them in his possession, and now has them as requested by Wright.

C. D. Thornton in his answer to the petition of the executors, admitted that he has possession of the securities, but further states that he neither admits nor denies that they are the property of the estate of Rodney A. Wright; that he is ready and willing to deliver the securities to the person entitled to them, as directed by the court.

In his answer to the intervening petition of Marie Furr, Thornton alleges that he can neither admit nor deny that the securities were given to Marie Furr, or that she removed them and placed them in a safety deposit box in a bank in Chicago, to which she alone had access. He admits that in January 1933, he asked Marie Furr to bring the notes and certificate to his bank in DeKalb, which she did, and he thereupon suggested to her that they take them to Rodney A. Wright at the hospital; that the securities were taken to him, and that Wright, in the presence of Thornton and Marie Furr, told him that the securities were the property of Marie Furr, and asked him (Thornton), to keep them for her, but that he declined to do so. In his answer, Thornton denies that in February 1933, Wright with the consent and knowledge of Marie Furr, brought the securities to Thornton, and told him that they were the property of Marie Furr and asked him to keep them for her, or that he has them now for her. Further answering he says that on or about March 1933, Wright called at the DeKalb Trust and Savings Bank, and delivered to him the securities with instructions to deliver them to Marie Furr at her request.

There was a hearing before the county judge on the petitions and answers, and the intervening petition of Marie Furr. The testimony in the county court was taken in shorthand and later transcribed. The order of the county court finds that the securities are the property of the estate of Rodney A. Wright, and directs the delivery thereof, to the executors. Marie Furr appealed from the order of the county court to the circuit court of DeKalb county, and it was stipulated by the parties, that the circuit judge should read the testimony heard in the county court together with additional evidence to be introduced in the circuit court, and render his decision thereon. The parties reserved the right to object to the competency, materiality or relevancy of the testimony heard in the county court. The circuit court ordered the securities delivered to the executors, and dismissed the appeal. Marie Furr has appealed to this court from the order of the circuit court.

If there is a claim that the delivery of personal property, the subject matter of a purported gift *inter vivos,* was to a third person for the benefit of the donee, then it becomes necessary to determine in what capacity the property was received by the third person. (*Taylor v. Harmison,* 179 Ill. 137; *In re Estate of Warden v. Pelling,* 299 Ill. App. 353.) Delivery of the subject matter of a gift *inter vivos* is necessary to the validity of such gift. Words of gift are not sufficient, but there must be actual and positive change of possession. Delivery to the agent of the donor, to be by such agent delivered to the donee, is not effectual if the donor dies before the agent has carried out his instructions, as the death of the principal revokes the authority of the agent, but if the donor delivers the property to an agent of the donee and parts with the possession and all right of control over the property, and the agent is invested with the actual possession thereof, the gift becomes complete though the donee does not himself have the manual possession of the property. The pos-

session of the agent is the possession of the principal—the donee. The gift must take effect *in praesenti* upon delivery of the property if to the agent of the donee. *Jennings v. Neville,* 180 Ill. 270; (also, *Trubey v. Pease,* 240 Ill. 513). In the case at bar Thornton, who held the securities at the time of the death of Rodney A. Wright, never delivered the securities to Marie Furr, the claimant of the securities as donee by gift *inter vivos* from Wright.

The law is well settled that the title to personal property by gift may be passed by delivery of it by the owner to another, as trustee for the donee. In such case, delivery to the trustee is deemed, in law, delivery to the donee, and divests the donor of all control over, or right of title in the property, and the gift is irrevocable. When a trust has been perfectly created it is not revocable by the death, nor at the will of the party who created it. (*Taylor v. Harmison,* 179 Ill. 137; *Telford v. Patton,* 144 Ill. 611; *Light v. Scott,* 88 Ill. 239; *Lawrence v. Lawrence,* 181 Ill. 248.) It is incumbent on the party asserting the trust to prove it by clear and satisfactory evidence. Whether a trust exists is to be determined from the proof, having in view all the surrounding facts and circumstances, and the intention of the parties, and the proof must be clear and explicit. The words or acts relied upon, as creating the trust, must show clearly and unequivocally the intention of the donor to create a trust. *Trubey v. Pease,* 240 Ill. 513.

There is no competent proof in this case proving the actual or symbolical delivery of the securities by Rodney A. Wright to Marie Furr, personally with the intention to transfer title thereto. The following statement of the law of gifts is applicable to the above conclusion of ours, and to legal aspects of this case, as the same are disclosed by the evidence.

"It is now well settled by all the authorities that negotiable instruments are subjects of a valid gift without indorsement or written assignment by the

payee, if delivered to the donee by the payee, with intent to transfer the title. The burden of proof of the gift is on the donee to prove all facts essential to a valid gift. The essential facts are the delivery of property by the donor to the donee with intent to pass the title, and the great weight of authority is that the proof to sustain the gift must be clear and convincing. (*Maxler v. Hawk,* 233 Pa. St. 316; *In re Bolin,* 136 N. Y. 177; *Grey v. Grey,* 47 id. 552; *Chambers v. McCreery,* 106 Fed. 364; 45 C. C. A. 322.) Mere possession by one claiming property as a gift, after death of the owner, is universally, we believe, held insufficient to prove a valid gift. The competent proof here shows plaintiff had possession of the notes and certificates a short time before her aunt's death and claimed title by gift. She was not competent to testify to the circumstances of the gift or what her aunt said and did, and there was no testimony on that question.'' *Rothwell v. Taylor,* 303 Ill. 226, 230. It is clear, therefore, that the testimony of C. D. Thornton stating what Marie Furr had told him Wright had said to her about the ownership of the securities, and the giving to her of the key to the safety box in which the securities were kept by Thornton, was incompetent.

The claim of the intervener, Marie Furr, that she is the owner of the securities by gift *inter vivos* from Rodney A. Wright, must rest on clear and convincing evidence produced by her, that Wright delivered the securities to Thornton with the unequivocal intention to pass the title to the securities to Marie Furr. To complete the gift, it was necessary that there should have been a delivery of the securities to Thornton by which Wright parted with all control over the securities reserving no right to reclaim or repossess himself of them. The delivery must have been absolute, Wright parting with all his present and future interest and control over the securities. The gift could have been made to Thornton for Marie Furr, if made absolute

and unconditional, so that the gift would have taken effect at once. (*Taylor v. Harmison, supra.*)

There is no evidence in the record proving clearly and convincingly that Wright delivered the securities to Thornton and thereby made Thornton the agent of Marie Furr, with Wright parting with all control over the securities absolutely, and making Marie Furr the principal invested with title to the securities and absolute control thereof as owner.

It is contended by counsel for Marie Furr that the trial court erred in not holding that C. D. Thornton was a trustee of the securities for Marie Furr, and that he should have surrendered them to her upon her demand after the death of Rodney A. Wright. It is specifically urged that all the facts and circumstances in evidence prove that when Wright brought the securities to Thornton in March 1933, just before he left for Arizona, he gave them to Thornton to keep for Marie Furr, and to deliver them to her upon her demand, as they were her property, and made Thornton a trustee for Marie Furr, as the donee of a gift of the securities. The question here is: Is the finding of the circuit judge contrary to the manifest weight of evidence that the intervener, Marie Furr, did not prove by clear and convincing proof an unequivocal intention by Wright to create a trust, and thereunder pass the title to the securities to Marie Furr, which intention was accomplished, *in praesenti*, by a delivery of the securities to Thornton by which Wright parted with all control over the securities reserving no right to reclaim or repossess himself of them. (*Coleman v. Hait,* 293 Ill. App. 615.)

Early in January, 1932, or shortly prior thereto, Rodney A. Wright told Thornton that he was accumulating considerable cash which he did not want to put in his account, because of an injunction, and he asked Thornton to keep it for him. Thornton refused and said that the only way he would do such a

thing would be to rent a safety deposit box in his own name, and give Wright access to it. On January 2, 1932, subsequent to this conversation, and at Wright's request, Thornton rented Box No. 12 in the safety deposit vaults of the DeKalb Trust and Savings Bank in his own name, made Wright his deputy to enter the box, and gave both keys to the box to Wright. At that time, Wright had a box in the same bank. Marie Furr had had safety Box No. 355, in that bank, since 1930.

Some time in May 1932, just before Wright was to leave for Europe, he delivered to Thornton collateral trust notes of the Northern Illinois Finance Corporation, of the par value of $20,000 and a certificate for 2,000 shares of common stock of that corporation. Wright then instructed Thornton to place the securities in Box No. 12, and take care of them for him. At that time, he gave Thornton one key to Box No. 12. Upon Wright's return from Europe in August 1932, Thornton delivered the securities and the key to Box No. 12, to Wright, and Wright took the securities out of the box.

During the month of December 1932, while Wright was in the hospital in Chicago, his office assistant, Mrs. Mordoff, brought to Thornton, at Wright's direction, collateral trust notes of the Finance Corporation of the par value of $20,000 and the certificate for the 2,000 shares of stock of that corporation, with a key to Box No. 12, and asked Thornton to place the securities in Box No. 12, which he did.

About January 12, 1933, Thornton went to Box No. 12, to remove and renew $11,000 of notes then matured, and found the box empty. He spent about two weeks attempting to locate the securities, but he failed to find them. Thornton did not tell Wright that the securities were missing, because of Wright's physical condition, although he talked to him about the securities, hoping Wright might indicate, or state where the securities were. Wright told Thornton that

the keys to Box No. 12, were in his office safe and he did not tell him that he had given a key to the box to Marie Furr. The Northern Illinois Finance Corporation notified the trustee of the collateral trust, that the notes now in question, were missing and not to pay them on presentation. Miss Quinn, the assistant secretary of the Finance Corporation, was called to the DeKalb hospital on January 13, 1933, by Wright, who inquired of her why he had not received a check for interest on collateral trust notes, which was due on January 8, 1933. She told him that the records did not show that the notes were in his name, and that she would take up the matter with the record holder of the notes, the DeKalb Trust and Savings Bank. Wright told Miss Quinn that he could not understand why the notes had not been presented for payment; that they were in his safety box at the DeKalb Trust and Savings Bank; that Thornton had one key to the box and Mrs. Mordoff had the other key. Also, that he was very much in need of funds, as he was under heavy expenses, due to his illness. Wright further discussed with her, dividends paid on his common stock due January 2, 1933, which the Finance Corporation was enjoined from delivering to him.

Some time about the middle of January 1933, Wright called Mrs. Mordoff to his room in the DeKalb hospital, and asked her if she had delivered the notes to Thornton; and told her that the notes were lost, and that he was disturbed about their disappearance. Mrs. Mordoff told Wright that there was a record of the notes which she had delivered to Thornton; under Wright's direction she brought the record to him the next day. Wright also sent Mrs. Mordoff to the office of the Finance Corporation to collect interest on the notes, but the agents of the corporation told her that the interest could not be paid, because of the injunction. Wright also told his sister that the notes were lost; that the stock in his brother's name was for his children.

The evidence shows that on December 20, 1932, Marie Furr gained access to deposit safety Box No. 12, at the DeKalb Trust and Savings Bank during the absence of Thornton. Thornton testified that at no time did he deputize Marie Furr to open Box No. 12, nor any other person than Rodney A. Wright.

In February, 1933, at Thornton's request, Marie Furr returned to him the securities which were taken from Box No. 12. Thornton and Marie Furr took the securities to Wright, who was then a patient in the hospital in DeKalb. Thornton returned the securities to Wright, and told him that he had been greatly disturbed by the disappearance of the securities; that he had endeavored to obtain a surety bond at a cost of $800 to insure the replacement of the value of the securities, but found it impossible to do so. Wright said that he was sorry that the matter had caused Thornton so much concern; that it was unfortunate, as Marie Furr had the right to get the securities, as they were hers; that he had given them to her; she had a right to get them; that he had given her a key to Box No. 12, and instructed her to get them. Wright asked Thornton to keep the securities for Marie Furr, but this, he declined to do, and left them with Wright on a table in Wright's room in the hospital.

About the first of March, 1933, just before leaving for Prescott, Arizona, Wright brought collateral trust notes of the Northern Illinois Finance Corporation of the par value of $14,000 (being renewals of matured notes heretofore mentioned), and the certificate for 2,000 shares of common stock of the Northern Illinois Finance Corporation to Thornton at the DeKalb Trust and Savings Bank. At that time Wright asked Thornton to keep the securities for Marie Furr and deliver them to her at her demand, as they were her property. Wright then also informed Thornton that the notes were reduced from $20,000 because he had made a loan of $5,000. Thornton placed the notes to the par value

of $14,000, and the certificate in his own safety Box
No. 248, and did not use Box No. 12 again.

On March 3, 1933, Wright called at the office of the
Northern Illinois Finance Corporation and inquired of
Thomas E. Courtney, the president of the corporation,
why his check for interest on notes in question, was for
6 per cent and not 7 per cent. Wright then stated that
he was a stockholder of the corporation, and the owner
of the notes on which interest had been paid him.
Thereupon, he was paid $110 additional interest on his
statement that he was a stockholder of the corpora-
tion, and the owner of the notes. Before leaving the
notes and the certificate with Thornton in March 1933,
Wright used some of the notes to the value of $5,000
to make a loan to his brother, Harry.

From Arizona Wright wrote to Marie Furr as fol-
lows: ''Dale has the fourteen notes right where they
were. Loaned five to Harry and have one with me.
I do not want anything but that you should have them,
Dear; right now would only be 15 for I couldn't get
other 5, but simply had to invest in order to get bigger
income for dear it is truly questionable whether or not
I'll ever do another day's work and I have to have
more or be dependent.'' Wright had consulted a physi-
cian in Paris, and it is evident from the record and his
letters, that before March 1933, he was not a well man.

Although Wright was in a precarious state of health,
and his financial interests were involved in the divorce
suit, he was hopeful of the day when he and Marie Furr
could be married. His personal expenses were very
heavy and he realized that owing to his physical condi-
tion, he would be dependent on the interest from the
securities, and the principal of some of them for his
care. He was not interested in Mrs. Furr's employ-
ment, and did not want to be informed about it. Before
leaving for Europe, Wright left his securities with
Thornton, and wrote to him as follows: ''Hotel
Pennsylvania, New York, May 13, 1932. Dale: In the

event anything happens to me, permit Marie to get into safety Box No. 12, and take as her own the $19,000.00 in collateral trust notes of the Northern Illinois Finance Corporation. She has the key. Rodney A. Wright.'' Subsequently, he wrote to Marie Furr from Prescott, Arizona, that owing to his illness he probably would not be able to earn his living, and that he would have to invest them for greater return thereon. It also appears from the evidence that Thornton acted as Wright's confidential agent during the divorce suit, which was pending during all the times the securities were in Thornton's possession, and that other securities of Wright not now in question, were held secretly by Thornton.

There are no facts in evidence proving clearly that Wright created a trust for the benefit of Marie Furr by delivering the securities to Thornton with the explicit intention of passing title to Marie Furr beyond recall by Wright. From the facts appearing in evidence, the reasonable conclusion must be drawn that Thornton was at all times while in possession of the securities, the agent of Wright, and under his instructions; and that the securities were held by him for an ulterior purpose, rather than an outright, or completed gift to Marie Furr. Under the facts and circumstances appearing in this case, it would be reasonable to draw the inference that Wright did not have the intention to give away the source and means of his support by gift of his assets, which would take effect before his death. We cannot say that the finding of the trial court that Wright did not make a completed gift *inter vivos* of the securities to Marie Furr is contrary to the manifest weight of the evidence, and the reasonable inferences to be drawn therefrom.

The executors called Marie Furr under section 60, of the Civil Practice Act [Jones Ill. Stats. Ann. 104.060], as a witness to prove the handwriting of Rodney A. Wright in one of his letters to her. It is

contended by counsel for Marie Furr, that having been called by the executors, her incompetency as a witness under the Evidence Act, was removed and she could testify in her own behalf concerning the subject-matter of the letter. Under the rule, as stated in the cases of *Merchants' Loan & Trust Co. v. Egan,* 222 Ill. 494, and *Garrus v. Davis,* 234 Ill. 326, the disqualification of Marie Furr, as a witness was not removed.

The petition for citation alleged that the securities were the property of the estate of Rodney A. Wright. In the circuit court the petition was amended to read that the securities were the property of Rodney A. Wright. We are of the opinion that the amendment was properly allowed, and that there is no variance between the allegations of the amended petition and the proof in the case. (*Sullivan v. Arcola State Bank of Arcola,* 314 Ill. 40; *Hansen v. Swartz,* 345 Ill. 609.

The order of the circuit court of DeKalb county is affirmed.

*Affirmed.*