(No. 15990.—Reversed and remanded.)

John H. Sullivan, Admr., Appellee, *vs.* The Arcola
State Bank of Arcola, Illinois, *et al.* Appellants.

*Opinion filed October 28, 1924.*

1. Administration—*what property is covered by sections 81
and 82 of Administration act.* Sections 81 and 82 of the Adminis-
tration act, authorizing an executor or administrator to petition the
court for the recovery of property believed to be in the possession
of any person, refer only to property which has come into the hands
of such person before the death of the deceased and which was
converted before or after such death.

2. Same—*when administrator cannot recover property by peti-
tion.* An administrator is not entitled to proceed, under sections 81
and 82 of the Administration act, for the recovery of money or
property which came into the possession of a bank after the death
of his intestate but he is confined to his action at law. (*Dinsmoor*
v. *Bressler,* 164 Ill. 211, followed, and *Blair* v. *Sennott,* 134 id. 78,
overruled.)

3. Banks—*a depositor is merely a creditor of the bank.* As the
relation of a bank and its depositor is only that of debtor and
creditor, the bank has no money of its depositor in its possession
but it merely owes money to the depositor.

Heard, J., took no part.

Appeal from the Appellate Court for the Third Dis-
trict;—heard in that court on appeal from the Circuit Court
of Douglas county; the Hon. George A. Sentel, Judge,
presiding.

Craig & Craig, for appellants.

John H. Chadwick, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

At the July term, 1922, of the county court of Doug-
las county, John H. Sullivan, administrator of the estate
of Nina R. Quirk, deceased, presented an affidavit un-
der section 81 of the Administration act, stating that he
believed the Arcola State Bank had in its possession or

had concealed or embezzled certain goods, chattels, moneys and effects belonging to the estate of Nina R. Quirk, and praying for a citation against the bank and certain of its officers and employees to appear before the court and make disclosure of such goods, chattels, moneys and effects. The cause was heard in the county court, and from the order made an appeal was taken to the circuit court, which made an order requiring the bank to pay to the administrator $500, the proceeds of the sale of a certain diamond ring, and to deliver to the administrator another diamond ring, but finding that the bank was entitled to retain $275.50, the amount of a deposit standing to her credit in the name of Mrs. J. S. Quirk at the time of her death, and $35, the proceeds of the sale of a cow. The bank appealed to the Appellate Court, which affirmed the judgment and granted a certificate of importance and appeal. The administrator assigned cross-errors in the Appellate Court and has renewed them here.

The facts were found by the circuit court and there is no dispute about them. Nina R. Quirk died intestate on December 30, 1920, and the appellee was appointed administrator of her estate. She was the wife of John S. Quirk, who was cashier of the bank. At the time of her death she had on deposit in the Arcola State Bank $275.50. During the year 1920 Mrs. Quirk drew 232 checks on the bank, signed "Mrs. J. S. Quirk," amounting to $2356.61. Those checks were paid by the bank and charged to the account of her husband, John S. Quirk. In May, 1921, he was discovered to have embezzled more than $100,000 of the bank's funds. At the time of her death Mrs. Quirk was the owner of two diamond rings, which were in her possession. Soon after her death a box containing the rings and other jewelry was left by her husband in the vault of the bank. The bank sold one of the rings for $500, and that amount was applied to reduce the shortage of Quirk to the bank. The officers of the bank took charge of a

cow on the farm of Quirk and sold it for $35, which was also applied on the deficit. The other diamond ring was not disposed of by the bank and was in its possession at the time of the hearing. The appellee demanded that the bank turn over to him the rings, the amount of Mrs. Quirk's deposit and the $35 received for the cow. The bank refused and the citation was issued.

Sections 81 and 82 of the Administration act are as follows:

"Sec. 81. If any executor or administrator, or other person interested in any estate, shall state upon oath, to any county court, that he believes that any person has in possession, or has concealed or embezzled, any goods, chattels, moneys or effects, books of account, papers or any evidences of debt whatever, or titles to lands belonging to any deceased person; or that he believes that any person has any knowledge or information of or concerning any indebtedness or evidences of indebtedness, or property titles or effects, belonging to any deceased person, which knowledge or information is necessary to the recovery of the same, by suit or otherwise, by the executor or administrator, of which the executor or administrator is ignorant, and that such person refuses to give to the executor or administrator such knowledge or information, the court shall require such person to appear before it by citation, and may examine him on oath, and hear the testimony of such executor or administrator, and other evidence offered by either party, and make such order in the premises as the case may require.

"Sec. 82. If such person refuses to answer such proper interrogatories as may be propounded to him, or refuses to deliver up such property or effects, or in case the same has been converted, the proceeds or value thereof, upon a requisition being made for that purpose by an order of the said court, such court may commit such person to jail until he shall comply with the order of the court therein."

The appellants contend that these sections refer only to property which came to the hands of the person charged before the death of the deceased person and was converted either before or after such death, and not to property belonging to the estate of the deceased person which has come into the hands of the party charged since the death of the deceased; and this is the question which the Appellate Court certified as the reason for granting the appeal. In the case of *Blair* v. *Sennott,* 134 Ill. 78, this question was considered and decided contrary to the appellants' contention, the court saying: "In our opinion this does not mean merely goods, chattels, moneys, etc., placed in the hands of the party charged by the deceased in his lifetime, but we think it includes also goods, chattels, moneys, etc., which belong to the estate of the deceased and which have come into the hands of the party charged since the death of the deceased. The language contemplates present ownership, and since a dead man can own nothing, 'belonging to any deceased person' can only mean 'belonging to the estate of any deceased person.'"

In *Dinsmoor* v. *Bressler,* 164 Ill. 211, these sections were again under consideration, and it was there held that they refer only to property which came to the hands of the person charged before the death of the deceased person and which was converted before or after such death. The court referred to the case of *Blair* v. *Sennott, supra,* saying that while the money which was the subject of contention in that case was collected after the death of the deceased, yet the securities upon which it was collected came to the possession of the person charged during the lifetime of the deceased by reason of the agency of such person for the deceased. The money was not collected for the administratrix or under any employment for her, but rather by reason of Blair's agency for the deceased while the latter was alive and by reason of his possession of the securities acquired through that agency. It was therefore held that

the doctrine of *Blair* v. *Sennott* should be limited to the facts of that case and its language qualified to conform to such facts.

In *Martin* v. *Martin,* 170 Ill. 18, it was said, speaking of these sections: "The statute is not designed to afford the means of collecting debts due to estates, (*Williams* v. *Conley,* 20 Ill. 643,) nor to try contested rights and title to property between the executors and others. (*Dinsmoor* v. *Bressler, supra.*) The mere fact that one party to the controversy is an executor will not justify depriving the other party of a trial by jury or authorize his imprisonment, but in a proper case the court may order the property or effects to be delivered up, or the proceeds or value thereof in case the same has been converted." This case and *Dinsmoor* v. *Bressler, supra,* in effect overrule *Blair* v. *Sennott, supra,* and they are cited and approved in *Moore* v. *Brandenburg,* 248 Ill. 232.

The rings came to the possession of the bank after the death of Mrs. Quirk. Under the doctrine of these cases the administrator is not entitled to the remedy by citation under sections 81 and 82. The account for $275.50 was merely a debt which the bank owed to the intestate and could not be recovered in this proceeding. The relation of a bank and its depositor is only that of debtor and creditor. The bank has no money of its depositor in its possession. It merely owes money to the depositor. The remedy of an administrator against a bank which refuses to pay a deposit is the same as that of any other depositor. Whether the bank is entitled to set off against the account checks of the deceased paid and charged to the account of John S. Quirk because the latter was subsequently found to be a defaulter is not to be determined in this proceeding. There was no evidence that the cow belonged to Mrs. Quirk. If the appellee is entitled to any relief it is by action at law. He is not entitled to relief by this proceeding.

The judgments of the Appellate Court and the circuit court will be reversed and the cause remanded to the circuit court, with directions to dismiss the petition.

*Reversed and remanded, with directions.*

Mr. JUSTICE HEARD took no part in this decision.