THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FLOYD C. TALLMADGE, Plaintiff in Error.

*Opinion filed December 21, 1927.*

1. BANKS—*act making insolvent banker guilty of embezzlement should receive equitable construction.* The provision of the Criminal Code making an insolvent banker guilty of embezzlement who receives a deposit is enacted for the benefit of the public generally, and although it is penal in its nature it should receive a fair and reasonable construction.

2. SAME—*act making insolvent banker guilty of embezzlement is valid.* The provision of the Criminal Code making an insolvent banker guilty of embezzlement who receives a deposit does not violate section 13 of article 4 of the constitution, as it is complete in itself, describes the requisites of the offense, prescribes a punishment therefor, does not purport to amend any other statute, and is not special or class legislation.

3. SAME—*what is essential to make insolvent banker guilty of embezzlement.* Under the provision of the Criminal Code making an insolvent banker guilty of embezzlement who receives a deposit, one of the essential elements of the offense is that the deposit, or some part of it, shall be lost to the depositor, and without such proof the offense is not established although the bank is insolvent and the deposit was received while it was so insolvent, as the imperative part of the punishment, upon conviction, is a fine "double the amount of the sum so embezzled and fraudulently taken."

4. SAME—*bank and depositor occupy the relation of debtor and creditor.* A general deposit with a bank placed to the credit of the depositor creates merely the relation of debtor and creditor between the bank and the depositor, and the bank has no money of the depositor in its possession but simply owes the money to the depositor.

5. SAME—*when insolvent banker cannot be convicted of embezzling deposit.* The president of an insolvent bank cannot be convicted of embezzling a deposit received while the bank was insolvent where the evidence shows that before the bank was closed more deposits were made and more money was checked out of the bank by the depositor than the amount of the deposit which the indictment charges was embezzled, as it will be presumed, in such case, that that particular deposit was checked out and not lost to the depositor, under the general rule of accounting between debtor and creditor that the sum first paid in is the first drawn out or that

the first item of the debit side is discharged by the first item on the credit side.

6. STATUTES—*when title of an act is sufficient.* The title of an act is not required to be an index to or as comprehensive in matters of detail as the body of the act, but if the title fairly indicates the general subject and reasonably covers all the provisions of the act and is not calculated to mislead the General Assembly or the people it is a sufficient compliance with section 13 of article 4 of the constitution.

7. CRIMINAL LAW—*statement of rule as to presumption of innocence.* The law always presumes an accused party innocent until he is proved to be guilty; and this presumption attends all the proceedings against him, from their initiation until they result in a verdict which either finds him guilty or converts the presumption of innocence into an adjudged fact.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. FRANK L. HOOPER, Judge, presiding.

MILLER & STREETER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ANKER C. JENSEN, State's Attorney, MERRILL F. WEHMHOFF, and T. R. JOHNSTON, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Floyd C. Tallmadge was indicted by a Kankakee county grand jury during January, 1926, for receiving on October 16, 1925, as president of the Momence State and Savings Bank, a deposit of $123.25 from Owen Bigelow when the bank was insolvent and the defendant well knew of such insolvency, and thereby the deposit was lost to Bigelow. A motion to quash the indictment was overruled, a plea of not guilty was entered and a trial had in the circuit court of Kankakee county at its October term, 1926. The jury returned a verdict finding defendant guilty of embezzlement in manner and form as charged in the indictment, found the value of the property embezzled and fraudulently taken to be the sum of $123.25, found the age of the de-

fendant to be forty years, and fixed the punishment at a fine of $246.50 and also imprisonment in the penitentiary. Upon motion of the State's attorney the court remitted $183.66 from the fine assessed by the jury. Motions for new trial and in arrest of judgment were denied by the court and judgment was entered assessing against defendant a fine of $62.84 and sentencing him to imprisonment in the penitentiary for an indeterminate period of not less than one year or more than three years. The defendant has brought the case to this court by writ of error to review the judgment.

Some of the facts developed on the trial were, that plaintiff in error about the year 1921 purchased a large number of shares of stock in the Momence State and Savings Bank, a State banking institution of some years' standing. He was elected president of the bank and received a salary of $150 per month till about January, 1924, at which time he declined receiving further compensation. Though he was seemingly inexperienced in the banking business, there were other men with at least some banking experience employed and engaged in the operation of the bank's business and who also occupied positions as officers thereof. The proof warrants the statement that at least two of such employees or officers have also been indicted for criminal offenses in connection with the bank's failure. Plaintiff in error did not spend all of his time at the bank, particularly after the first part of 1924. It appears that after that time he was engaged in some other business and was out of the city of Momence a great deal of the time, though he and his family resided there. However, he did help out at the bank occasionally, particularly on Saturdays, presided at meetings of the board of directors, and was familiar with many, if not most, of the loans of the bank. The financial status of the bank had been somewhat unstable on previous occasions and it had been under unusual surveillance by the State banking department, to whom daily reports were

required to be màde during the latter half of December, 1924, and the early part of January, 1925. This condition was known to plaintiff in error, as shown by the record, as were many questionable bank loans to its officers, to relatives of most of the officers and to other persons, and also the presence of certain commercial paper which it appears was obtained from the maker as an accommodation and for the purpose of covering up other questionable bank transactions. Plaintiff in error sold, during the summer of 1925, eighty shares of his bank stock to a man who later became cashier of the bank, and one of the notes representing a substantial portion of this stock sale was among the bank's assets at the time the bank was closed by the State Auditor, on November 13, 1925. The deposit of $123.25 involved and referred to in the two counts of the indictment was in the form of a Chicago and Eastern Illinois Railroad Company pay check issued and delivered to Owen Bigelow, who on October 16, 1925, presented it to the bank's teller, who credited the amount thereof to the depositor's account. At the time of making this deposit Bigelow had a balance in the bank of $37.16, which made a total bank account on that day of $160.41. He made an additional deposit on October 20 of $27.70, and having issued checks in amount of $119.53 during the balance of the month of October, which checks were paid by the bank, he thereby reduced his bank balance on October 31 to $68.58. He made two additional deposits during November of $119.29 and $184.21. He continued to issue checks upon the bank during the month of November, which were also paid by the bank. His total credits after October 15, 1925, and prior to the closing of the bank, including his bank balance of $37.16 and the four deposits previously stated as made by him, were $491.61, and the total amount of checks drawn by him and paid by the bank during the same period was $244.18, which left a net bank balance in favor of Bigelow of $247.43 when the bank was closed,

which date was almost a month after making the deposit of the pay check here involved. Plaintiff-in error was not present when the deposit was received and accepted by the bank's teller and it appears he was not in the city on that date. It also appears that he attended a board of directors' meeting on the night of October 19, 1925, and left with his family by automobile early on October 20 for New Mexico, on account of ill-health, principally. He was first arrested in El Paso, Texas, about January 1, 1926, and during the latter part of February returned to Illinois and surrendered himself to the officers of Kankakee county.

Counsel for plaintiff in error have assigned numerous errors and have submitted a rather lengthy brief. In the view we take of the case it will not be necessary to discuss all of the errors relied upon.

The statute upon which the indictment is predicated is entitled "An act for the protection of bank depositors," and section 1 thereof is as follows: "That if any banker or broker, or person or persons, doing a banking business, or any officer of any banking company, or incorporated bank, doing business in this State, shall receive from any person or persons, firm, company or corporation, or from any agent thereof, not indebted to said banker, broker, banking company, or incorporated bank, any money, check, draft, bill of exchange, stocks, bonds, or other valuable thing which is transferable by delivery, when at the time of receiving such deposit, said banker, broker, banking company or incorporated bank is in his or its knowledge insolvent, whereby the deposit so made shall be lost to the depositor, said banker, broker, or officer, so receiving such deposit, shall be deemed guilty of embezzlement, and upon conviction thereof, shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto, may be imprisoned in the State penitentiary, not less than one nor more than three years." (Smith's Stat. 1927, p. 928.)

It is contended by counsel for plaintiff in error that the act in question is unconstitutional because (1) it purports to be an independent act, when, in fact, it is an attempt to amend an act in regard to criminal jurisprudence, and is in violation of section 13 of article 4 of our constitution; (2) the act is incomplete and unenforceable; (3) it is special legislation, in that it does not protect one who deposits property in a bank other than as is enumerated in the act; (4) the penalty provided is a subject not embraced within the act; and (5) the act is class legislation, being directed against officers of a bank and not against employees as well.

The purpose of the statute undoubtedly was to protect the public from being induced to deposit money, or property of like import, with insolvent bankers, and time and experience have demonstrated to us that there was ample reason, if not a real necessity, for such legislation. Ordinarily a penal statute should be strictly construed, and though this statute is penal in its nature yet it is one enacted for the benefit of the public generally and should receive a fair and reasonable construction. We have carefully considered the constitutional objections presented and are of opinion the act is not unconstitutional for any of the reasons stated. The act is complete in itself, describes the requisites of the offense, prescribes a punishment therefor, and does not purport to amend any other act or statute. It is not special or class legislation, and a penalty would be naturally expected to be included within the provisions of the act as an incident thereto. The title of an act is not required to be an index to or as comprehensive in matters of detail as the body of the act, but if the title fairly indicates the general subject and reasonably covers all the provisions of the act and is not calculated to mislead the General Assembly or the people, it is a sufficient compliance with section 13 of article 4 of our constitution. *People* v. *Stacker,* 322 Ill. 232; *State* v. *Milauskas,* 318 id. 198; *People* v. *Jabine,* 324 id. 55.

It is also contended that the verdict of the jury is not sustained by the evidence, in that the jury found the amount of money alleged to have been embezzled was $123.25 and assessed a fine, in accordance with the statute, of double that sum; and that the court erred in remitting $183.66 of the fine assessed by the verdict of the jury and thereafter rendering judgment on such amended verdict. The case was evidently tried by the State and presented to the jury on the theory that the sum of $123.25, which was the amount of the pay check deposited in the bank by Bigelow on October 16, 1925, was embezzled and lost to the depositor. This more clearly appears from two instructions given to the jury by the court upon request of the defendant, and to which we shall hereafter refer. As previously stated herein, after trial and verdict, and on motion of the State's attorney, the court remitted all of the fine assessed by the jury, in amount of $246.50, except the sum of $62.84, and rendered judgment accordingly against defendant, sentencing him to pay a fine in that amount and to an indeterminate term in the penitentiary of not less than one year or more than three years. At the time of making that motion in the trial court it was the State's position or theory that the proper way to ascertain the correct amount of the $123.25 check or deposit which was actually lost to the depositor, Bigelow, on account of the insolvency of the bank, is to deduct $37.16, the amount of Bigelow's bank balance prior to making the $123.25 deposit on October 16, 1925, from $68.58, which latter sum was Bigelow's bank balance on October 31, 1925. His bank balance on that date had been reduced to that sum by reason of checks drawn against his account during the month of October and paid by the bank after depositing the check here involved. The subtraction process suggested leaves the sum of $31.42. It will thus be seen that the State, when making its motion to the court to remit a major part of the fine assessed by the jury, conceded the verdict of the jury was wrong and not in ac-

cord with the proof as viewed by the State's attorney. The People's brief in this court advances the same theory as to ascertaining the depositor's loss, and says: "The jury found that Mr. Bieglow had lost $123.25, which was not the case." It is imperative, under the statute here involved, that the punishment inflicted in cases of conviction shall be a fine in double the amount lost to the depositor, while punishment by imprisonment may or may not be inflicted. (*Brown* v. *People,* 173 Ill. 34.) It is important the exact amount of the deposit lost to the depositor shall be definitely ascertained, as the fine to be imposed in case of conviction is based thereon. (*Meadowcroft* v. *People,* 163 Ill. 56.) Clearly, the verdict and proof as viewed by the State and based upon its own theory do not correspond. The court's action in granting the motion of the State and remitting a major portion of the fine assessed by the jury was error. In *Cole* v. *People,* 84 Ill. 216, the jury found the accused guilty of the offense charged in the indictment and fixed the imprisonment at three years in the penitentiary. A motion for new trial was overruled by the court and a sentence imposed by the court of one year in the penitentiary. This court said: "The court had no more rightful authority to mitigate the measure of punishment than it would have to increase it. It was the duty of the court either to pronounce judgment on the verdict or set it aside and award a new trial." That action, in our judgment, would have been the proper method of procedure in this case.

In our investigation and consideration of this record there are two rather unusual and astonishing incidents: First, the result of the jury's verdict; and second, the overruling of motions for new trial and in arrest by the court notwithstanding the following instruction given by the court:

"The court instructs you that where a depositor in a bank makes deposits in a general checking account, to his

account at various times, and then draws checks against said deposits, if said depositor gives no direction to the bank out of which deposit or deposits the said check or checks are to be drawn, and the bank does not charge said checks against any particular deposit, then the law is that the said checks should be charged against his first deposit until the said first deposit is exhausted.

"And the court further instructs you in this case if you believe from the evidence that the complaining witness, Owen Bigelow, on the 16th day of October, 1925, deposited a check for the sum of $123.25 in a general checking account, to his credit in the Momence State and Savings Bank, and that at said time he had a credit to his account of $37.16, making a total of $160.41 on deposit on that day at the close of business, and if you further believe from the evidence that thereafter the bank was closed by the Auditor of Public Accounts, and if you further believe from the evidence that when the bank was closed by the Auditor, the said complaining witness, Owen Bigelow, had withdrawn by checks, drawn after said $123.25 had been deposited, drawn on said account more than $160.41, without directing out of which deposit said checks should be paid, and that said checks were paid by said bank and charged against the account of said Owen Bigelow generally and not against any particular deposit of said account, then under the law it is presumed that the said deposit of $123.25 complained of in the case had been exhausted, and the said deposit of $123.25 was not lost to the depositor, Owen Bigelow."

Bigelow had a general checking account at the Momence State and Savings Bank and after depositing the check here involved thereby increased his bank balance to $160.41. We have previously stated the State's theory of this case as here presented. The proof positively establishes that after October 16, 1925, when Bigelow's bank balance was $160.41, he issued checks or there was drawn by him

against his account and paid by the bank prior to November 13, 1925, the time the bank was closed, the sum of $244.18. Hence it would seem, under the instruction just quoted and the uncontradicted proof presented, that the particular deposit charged to have been fraudulently taken and embezzled was not lost to the depositor. It is one of the essential elements of the offense, as specified in the statute, that the deposit, or some part of it at least, shall be lost to the depositor. Although the bank is insolvent and a deposit is received while so insolvent, yet it does not necessarily result that either the whole or any portion of the sum deposited is either lost to the depositor or embezzled by the banker. The sum deposited on account of the insolvency of the bank may be fraudulently taken by the banker or officer of such bank, but that does not, of itself, constitute the offense. It is only when "the deposit so made shall be lost to the depositor" that the officer of the bank, or banker, shall be deemed guilty of embezzlement, and the imperative part of the punishment, upon conviction, is a fine that is "double the amount of the sum so embezzled and fraudulently taken." If the entire amount of the deposit is paid back to the depositor or paid out upon his checks prior to failure, suspension or involuntary liquidation of the bank, it is plain that no money of the depositor has been either lost to such depositor or embezzled by the banker; and it is equally plain that if a part of it is checked out and paid before such failure, suspension or involuntary liquidation, then the amount so paid is neither lost nor embezzled. (*Meadowcroft* v. *People, supra.*) The jury either did not understand the instruction, failed to comprehend the evidence or were misled by the manner in which the case was presented. The court, however, must have understood the case as presented, and should, under the instruction given and the evidence introduced, have at least granted defendant's motion for new trial.

For the errors previously discussed herein we think the defendant was entitled to, and the court erred in not granting him, a new trial.

It is contended by counsel for plaintiff in error that the entire amount of the deposit of $123.25 made by Bigelow on October 16, 1925, was paid out upon Bigelow's checks drawn thereafter and paid by the bank prior to the closing of the bank, and therefore no part of such deposit was lost to him. As previously stated, Bigelow did check out $244.18 during that period of time. Counsel contend the universal rule is, as between a bank and a depositor, where the depositor has a general checking account and it is under no specific regulation or instructions and where there are many deposits and withdrawals, that "the first money in is the first money out," and that the first items of the debit side are charged against the first items of the credit side. The State contends that no such rule is applicable, because general deposits made by a despositor in a bank become a part of a common mass of money, and each check issued or drawn by a depositor against his bank balance is taken from or paid out of such general mass of money and not out of any particular deposit. Without question a general deposit with a bank placed to the credit of the depositor creates merely the relation of debtor and creditor between the bank and such depositor. The bank has no money of its depositor in its possession but simply owes money to such depositor. (*Sullivan* v. *Arcola State Bank,* 314 Ill. 40; *Woodhouse* v. *Crandall,* 197 id. 104.) Notwithstanding that rule of law as between banker and depositor, one of the requisite and essential elements of the offense here being considered, as described in the statute and as interpreted by this court, is, that the deposit so made, or some part of it, shall be lost to the depositor. The law always presumes an accused party innocent until he is proved to be guilty, and this is a presumption which attends all the proceedings against him, from their initiation until they

result in a verdict which either finds the party guilty or converts the presumption of innocence into an adjudged fact. Hence it is necessary for the State to prove that the deposit, or some part of it, is lost to the depositor before a legal conviction can be obtained under this statute. The general rule which governs in keeping the account between a bank and a depositor is, that as money is paid in and drawn out, or other debts and credits are entered, with the consent of both parties, in the general banking account of the customer, a balance may be considered as struck at the date of each payment or entry on either side of the account. (3 R. C. L. par. 159, p. 530.) The same authority recites that in cases of running accounts, with many debits and credits and no balances other than for the mere purpose of making rests, payments ought to be applied to extinguish the debts according to the priority of time, so that the credits are to be deemed payments *pro tanto* of the debts antecedently due. This is done because it is most just and equitable between the parties, and also because, when no different intention has been expressed, such is presumed to be the intention of both parties, as being in accordance with the ordinary and usual course of dealing; and between banker and depositor the general rule of appropriation of payments is ordinarily applicable, and, indeed, it has been held that in the case of a banking account there is no room for any other appropriation than that which arises from the order in which the receipts and payments take place and are carried into the account. Presumably it is the sum first paid in that is first drawn out; the first item on the debit side that is discharged by the first item on the credit side. (21 R. C. L. par. 110, pp. 103, 104; *First Nat. Bank of Nashville* v. *National Surety Co.* 130 Fed. 401, 66 L. R. A. 777; *Clayton's case,* 1 Meriv. 572.) Let us suppose the Momence bank had been closed on the day following the deposit of the $123.25 check by Bigelow and nothing had been paid back to him on that deposit.

Under such a supposition there could be no controversy that such deposit would have been lost to the depositor. In the instant case numerous checks were drawn by Bigelow and paid by the bank before it was closed, which checks were in excess of the amount of the deposit here charged to have been lost. It is true, additional deposits were made by Bigelow after the deposit of October 16, 1925, but by what method can it be ascertained or proven that the loss occurring to Bigelow when the bank was closed was out of the check of October 16, 1925, or some subsequent deposit? Applying the rule seemingly existing and established, as heretofore mentioned, between banker and depositor, it would appear that the $123.25 check had been fully discharged by the checks drawn by the depositor and paid by the bank before it was closed. If we are correct in our reasoning,—and we think there is no question as to its soundness,—it will not be possible to legally establish any portion of the check in question was lost. We are not advised as to why the State's attorney chose this particular check or banking transaction upon which to base the prosecution of the defendant, when, seemingly, other transactions existed which were not subject to the defense just discussed.

If one of the essential elements of the offense cannot be established under the particular situation and unusual facts in this case, then it would be useless to reverse the judgment and remand this cause for another trial, with the possible return of the case to this court to be again considered on the last point discussed. It is our opinion that the prosecution of plaintiff in error on this particular indictment must fail, and the judgment is therefore reversed.

*Judgment reversed.*