(No 20730.— )

CARL HANSEN, Admr., Defendant in Error, *vs.* KATHERINE SWARTZ, Plaintiff in Error.

*Opinion filed October 23, 1931.*

BERNARD J. BROWN, for plaintiff in error.

JOSEPH GRANICK, (CHARLES H. PEASE, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Carl Hansen, administrator to collect of the estate of Ignatz Swartz, deceased, filed a petition under sections 81 and 82 of the Administration act, in the probate court of Cook county, against Katherine Swartz, to require her to appear before the court for examination concerning property which it was alleged she had in her possession belonging to the estate of Ignatz Swartz, deceased. The respondent appeared, evidence was heard by the court, and an order was entered requiring the respondent to deliver within twenty days the property involved to the petitioner, with any interest which had been collected on the securities which were, in part, the subject matter of the suit. The respondent appealed to the circuit court and there demanded a jury trial, which was denied. The court heard the evidence and entered an order requiring the respondent to deliver to the petitioner within thirty days the property involved, with interest on certain values fixed by the order, and the respondent, claiming that sections 81 and 82 are unconstitutional, sued out a writ of error from this court.

Ignatz and Adolph Swartz were brothers and Katherine was Adolph's wife. At the time of his death Adolph was indebted to the Broadway Trust and Savings Bank upon his note for $4096.57, for which it held as collateral the securities involved in this case. On December 6, 1927, these securities were in the bank in the name of Ignatz as collateral security on a note. Ignatz went to the bank wanting the loan transferred to his brother, Adolph, as attorney in fact. He receipted to the bank for the securities, paid the note, the loan was immediately renewed in the name of Adolph, attorney in fact, and the securities were pledged as collateral for the note. On April 7, 1928, Ignatz di-

rected that the loan be changed to the name of Adolph individually—not as attorney in fact. Ignatz and Adolph, the latter as attorney in fact, then receipted for the securities, the note was paid and a new note was executed by Adolph, for the security of which the same collateral was pledged. At that time Ignatz said he wanted the securities turned over to Adolph to take care of for him—"wanted them in his own name and not to be bothered with the attorney-in-fact business." Adolph died on April 28, 1928, and Katherine was appointed administratrix of his estate on June 29, 1928. On September 11, 1928, Katherine, as administratrix of Adolph's estate, filed her petition in the probate court to require the bank to surrender the securities to her, and it answered, in accordance with the facts, that on April 6, 1928, Adolph executed his note for $4096.57, payable to the bank upon demand, with interest at seven per cent per annum, to secure the payment of which he deposited various notes and mortgages, directing the bank to collect them and apply the proceeds to the payment of his note; that the bank did make some collections, which it applied upon Adolph's note, leaving an unpaid balance of $2985.44 on that note; that the bank held certain securities (being those here involved) for the payment of the unpaid balance of the note, and upon payment of $2985.44 it would surrender them in such manner as the court might direct. The probate court thereupon entered an order directing the bank to surrender the securities to Katherine upon payment of the balance due. A mortgage securing $6000, held as collateral, was paid, Adolph's note was paid out of the proceeds, and the balance ($3220.30) and the remaining securities, which had been held as collateral, were delivered to Katherine in compliance with the order of the probate court. Ignatz died on February 14, 1929, at the Parkway Sanitarium, leaving in the possession of the sanitarium a diamond ring, a Waltham watch, a fountain pen, a pair of cuff links, some papers and $25 in cash,

which after his death the sanitarium delivered to Katherine. These assets are a part of the property which this proceeding seeks to reach. The securities and cash so received by Katherine from the bank, and the effects and cash which the sanitarium surrendered to her, are the assets which are involved in this proceeding.

In addition to what has been shown with reference to the securities held by the bank at Adolph's death, Bernard J. Brown, who was attorney for Mrs. Swartz in the proceeding in which she gained possession of them, testified that after possession had been thus gained, "in the fall of 1928, Katherine Swartz and Ignatz Swartz came into my office. Ignatz asked Mrs. Swartz to let him have some money—he wanted to go to Florida. I asked him if that stuff that we got from the bank is his, and he said: 'I have no interest in that at all. That is not mine. I had a deal with brother Adolph to turn everything over to him. He was to take care of me while I was alive, and all I ask of Katherine is that she help me out as I go along. I have no place to live. My wife and my step-son have thrown me out of the house more than two years ago. I have no business. They have taken away everything I have got, and all I ask of Katherine is that she take care of me while I am alive.' Mrs. Swartz said: 'Anything I can do for him I will. If we get the money I will take care of him and give him anything he wants.' She then gave him some money and he went to Florida."

The evidence thus tended to show that Ignatz, in disposing of the securities at the bank as he did and in his dealing with them after their recovery from the bank by Mrs. Swartz, had no intention that they should be returned to him. Adolph became bound upon his note to the bank, and after the death of Adolph, if the testimony of Brown be true, Ignatz disclaimed all interest in the securities and did not expect their return. If Ignatz gave possession of and title to the securities to Adolph, either as a gift or for

a consideration, Katherine's possession of the securities was under a claim of title which, under sections 81 and 82 as amended in 1925, the probate court was competent to determine. (Laws of 1925, pp. 1, 2.) This question of title raises a question of fact but the question of fact is not argued. The plaintiff in error rested her case upon the proposition that the sections are unconstitutional.

The sections of the constitution claimed to be violated are section 29 of article 6 and section 12 of article 2. The first of these provides that "all judicial officers shall be commissioned by the Governor. All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform."

Sections 81 and 82 of the Administration act before their amendment in 1925 created a right of reaching property which had been placed by the deceased in his lifetime in the possession of the party charged, and the remedy did not extend to the determination of a contested right or title to the property because no provision was made for the trial by jury, without which no man can be deprived, constitutionally, of his property. (*Sullivan* v. *Arcola State Bank,* 314 Ill. 40; *Martin* v. *Martin,* 170 id. 18; *Dinsmoor* v. *Bressler,* 164 id. 211; *Tappy* v. *Kilpatrick,* 337 id. 600.) By the amendment (Laws of 1925, pp. 1, 2,) the remedy was extended to property belonging to the "executor or administrator of the estate of any deceased person," and power was conferred on the court to determine "all controverted questions of title and claims of adverse title and to determine the right of property" by a trial by jury upon the demand of either party. (*Johnson* v. *Nelson,* 341 Ill. 119.) This remedy is not, however, applicable to the collection of a debt. *Johnson* v. *Nelson, supra; Sullivan* v. *Arcola State Bank, supra.*

The objection made to these two sections is, that they attempt to provide a remedy for an executor or administrator for the recovery of property belonging to the estate in the possession of another in a manner not generally and uniformly applicable to other persons in the same class and to enforce the judgment in a manner not applicable to cases where other persons of the same class are involved. Particular reference is made to the provisions in the statute in regard to guardians and wards and to that in regard to incompetents, idiots, lunatics, drunkards and spendthrifts. Sections 52 and 53 of the former statute and sections 53 and 54 of the latter are in all respects the same as sections 81 and 82 of the Administration act, and all of these sections were amplified from section 90 of the Statute of Wills in the Revised Statutes of 1845. (*Tappy* v. *Kilpatrick, supra.*) Sections 81 and 82 have been in the Administration act since the revision of 1874, but the corresponding sections were not included in the other statutes until 1919. (Laws of 1919, pp. 582, 596.) The administration of estates of deceased persons and the care of the property of infants, lunatics and spendthrifts are not so similar in character as to require, of necessity, identical rules for their regulation. The administration of estates consists for the most part of the prompt collection, transfer and distribution of the assets of the decedent in accordance with the law or his will and in a comparatively short time, while the care of the property of infants and of persons under disability of insanity or other incompetency may continue during all the years of minority of the infant or the life of the idiot, lunatic or spendthrift. In this difference the legislature may have found a sufficient reason for a classification requiring or authorizing different methods of procedure. In 1919 the acts in regard to guardians and wards and to lunatics and other incompetents were amended, and the provisions of those acts were from that time identical until the amendment of the sections in the Administration act in 1925.

This amendment did not apply to the acts in regard to guardians and wards and to lunatics and other incompetents, but in 1929 these acts were amended by the addition of the same provisions as well as the corresponding sections in the Administration act in 1925, so that when this cause was heard in the circuit court in November, 1930, the provisions of all three acts were identical and the ground alleged for the constitutional objection did not exist.

Section 12 of article 2 of the constitution provides that no person shall be imprisoned for debt except in the cases mentioned in the section, but no question of the violation of this section arises on this record. The court made no order of imprisonment but expressly reserved jurisdiction of the cause for the purpose of further proceeding in case the respondent failed to comply with the order. It will be time enough to consider the validity of any order of imprisonment when the court makes such an order.

The question of fact presented here is whether the property in question belongs to the estate of Ignatz or of Adolph Swartz, and it was triable by a jury in this proceeding. The plaintiff in error contends that the claim should have been filed against the estate of Adolph. While she secured the order of court for the possession of the securities from the bank on the representation that they were a part of the estate of Adolph, of which she was administratrix, she never filed an inventory of the securities as assets of the estate. There is no suggestion that the articles which she secured from the sanitarium were assets of Adolph's estate and this point does not concern those articles, but as to the securities received from the bank on the claim that they were assets of Adolph's estate it is claimed that since the citation was against Katherine in her individual capacity, only, and not as administratrix, the estate of Adolph was not a party to the suit, that it was entitled to a hearing at which it was represented and its

interests protected, and judgment should not have been entered against it until it was brought into court.

The defendant in error cites cases from several jurisdictions to the effect that where an administrator comes into possession of property not belonging to the estate of his decedent and treats it as property of the estate he is liable personally to the owner of the property for the conversion. Such cases are, however, not to the point here, where the suit is not for the tort of the individual who is administratrix of the estate of Adolph but for the possession of the property or its proceeds which was in the custody of the bank at Adolph's death and apparently the property of his estate, and subsequently came to the possession of the plaintiff in error as the property of the estate of Adolph. Clearly the estate of Adolph was interested in the question of the title to the property and was a necessary party to the litigation. Judgment based upon the right to the title and possession of the securities should not have been rendered in the absence of representation of that estate, and we cannot adjudicate the questions presented in this condition of the record. Katherine was not the only person interested in Adolph's estate. There were four heirs besides her. It is a fundamental principle applicable to all proceedings, whether common law, chancery or statutory, that a person must have an opportunity of being heard before a court can render judgment against him. (*Leininger* v. *Reichle,* 317 Ill. 625.) Where a party has been omitted whose presence is so necessary that a final decree cannot be entered without necessarily affecting his interests the court should not proceed to a decision of the case on the merits. The objection may be made by a party at the hearing or on appeal or error and the court will on its own motion take notice of the omission and rule accordingly. *Mortimore* v. *Bashore,* 317 Ill. 535.

No point is made that the court erred in declining to grant a jury trial in the circuit court upon the motion of

the plaintiff in error. The trial in the circuit court was *de novo* and the court erred in overruling the demand for a jury. If on the remandment of the cause either party demands a jury trial it should be allowed.

The judgment so far as it concerns the property received by the plaintiff in error from the sanitarium is affirmed and so far as it concerns the property received from the bank is reversed and the cause is remanded to the circuit court, with directions to permit the representative of Adolph's estate to be made a party if the defendant in error shall so desire, otherwise to dismiss for want of proper parties.

*Reversed in part and remanded, with directions.*